OWENS, McCREA LINSCOTT PLLC
Regina M. McCrea, ISB No. 6845
Email:  *rmccrea@omllaw.com*
6500 N. Mineral Drive, Suite 103
Coeur d'Alene, ID  83815
Telephone:  (208) 762-0203

MORGAN, LEWIS & BOCKIUS LLP
Debra L. Fischer
Email:  *debra.fischer@morganlewis.com*
Seth M. Gerber
Email: *seth.gerber@morganlewis.com*
2049 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone: (310) 907-1000
Facsimile: (310) 907-1001

Attorneys for Defendant Lee Tilleman

## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| KIBBLE & PRENTICE HOLDING COMPANY, d/b/a USI INSURANCE SERVICES NORTHWEST,<br><br>   Plaintiff,<br><br>  v.<br><br>LEE TILLEMAN,<br><br>   Defendant. | Case No. 3:21-cv-00083-BLW<br><br>**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL** |

Defendant Lee Tilleman hereby responds to the allegations in the Complaint filed by Plaintiff Kibble & Prentice Holding Company, d/b/a USI Insurance Services Northwest ("Plaintiff" or "USI") as follows:

### PARTIES

1. USINW is a Washington Corporation with its principal place of business in New York. USINW is a wholly owned subsidiary of USI Insurance Services LLC ("USI

Insurance"), which, through and together with USINW and its other regional subsidiaries and divisions, is a leading insurance brokerage service provider. USI Insurance is a Delaware limited liability company with its principal place of business in New York. In this Complaint, USINW and USI Insurance are collectively referred to as "USI."

**Defendant's answer:** Defendant lacks sufficient information or belief to admit or deny the allegations, and on that basis denies the allegations.

2.     Upon information and belief, Lee Tilleman is an individual citizen of Idaho, domiciled at 3974 Ridgewater Drive, Lewiston, Idaho 83501.

**Defendant's answer:** Admitted.

## JURISDICTION AND VENUE

3.     Jurisdiction is proper in federal court pursuant to 28 U.S.C. § 1332, as this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

**Defendant's answer:** Admitted.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in this District.

**Defendant's answer:** Admitted.

## FACTUAL ALLEGATIONS

### A.   USI's Business

5.     USI provides a full range of insurance, risk management, and other related services to thousands of clients nationwide.

**Defendant's answer:** Defendant admits USI provides a full range of insurance, risk management, and other related services. Except as so admitted, Defendant lacks

sufficient information or belief to admit or deny the allegations, and on that basis denies the allegations.

6.     USINW is a wholly-owned subsidiary of USI Insurance Services ("USI Insurance") and serves clients in the northwest region of the United States. USI Insurance, together with USINW and its other divisions and subsidiaries, is one of the largest insurance brokerages in the United States and provides a full range of insurance, risk management, and other related services to thousands of clients nationwide. USINW and USI Insurance are collectively referred to as "USI."

**Defendant's answer:** Defendant admits USI Insurance is one of the largest brokerages in the United States and provides a full range of insurance, risk management, and other related services. Except as so admitted, Defendant lacks sufficient information or belief to admit or deny the allegations, and on that basis denies the allegations.

7.     USI employs a team of insurance brokers called "Producers" to identify, solicit, and service existing and prospective client relationships and opportunities for the benefit of USI.

**Defendant's answer:** Defendant admits that USI Insurance employs salespersons referred to in the industry as "Producers" and that USI Insurance expects Producers to identify and solicit new customers and to also spend a minor amount of their time dealing with existing customers. Except as so admitted, Defendant denies the allegations.

8.     USI regularly conducts repeat business with their clients. For example, when a policy is set to expire, USI works with the client to evaluate renewal options.

**Defendant's answer:** Defendant lacks sufficient information or belief to admit or deny the allegations, and on that basis denies the allegations.

9.     USI also works with its clients to identify cross-selling opportunities and place other types of insurance.

**Defendant's answer:** Defendant lacks sufficient information or belief to admit or deny the allegations, and on that basis denies the allegations.

10.   An integral part of USI's business is the relationships and goodwill it cultivates with its clients. These relationships and goodwill are developed by hiring and training skilled personnel – especially Producers – and through those Producers, identifying and satisfying client needs, and otherwise developing a solid reputation in the business community.

**Defendant's answer:** Defendant lacks sufficient information or belief to admit or deny the allegations, and on that basis denies the allegations.

11.   USI relies on its Producers to develop client relationships for the benefit of USI by encouraging repeat business, cross-selling other USI products, and obtaining referrals.

**Defendant's answer:** Defendant admits that USI Insurance employs salespersons referred to in the industry as "Producers" and that USI Insurance expects Producers to identify and solicit new customers and to also spend a minor amount of their time dealing with existing customers. Except as so admitted, Defendant lacks sufficient information or belief to admit or deny the allegations, and on that basis denies the allegations.

**B.   USI Insurance's Purchase of CHS Insurance Services, LLC (the "Purchase")**

12.   Effective May 4, 2018 ("Effective Date"), USI Insurance purchased the membership interests, customer accounts, and associated goodwill of CHS Insurance Services, LLC ("CIS"), a Minnesota limited liability company and a leading agribusiness insurance brokerage. Like USI, CIS was an insurance brokerage that employed and relied on Producers to solicit clients for CIS and to develop and maintain relationships and goodwill with CIS's clients for the benefit of CIS.

**Defendant's answer:** Defendant admits that CIS employed salespersons referred to in the industry as "Producers" and that CIS expected its Producers to identify and solicit

new customers and to also spend time dealing with existing customers. Defendant admits that USI Insurance purchased the membership interests, customer accounts and associated goodwill of CIS. Except as so admitted, Defendant lacks sufficient information or belief to admit or deny the allegations, and on that basis denies the allegations.

## C.   Tilleman Accepts Employment with USI Insurance and, thereafter, USI

13.   In conjunction with the closing of the Purchase, and to maintain and continue the business goodwill and customer accounts it had acquired from CIS, USI Insurance offered Tilleman a position as a Producer at USI Insurance to become effective upon the closing of the Purchase. In that position, Tilleman would be working with the same client accounts as he had for CIS so he could continue to develop and maintain goodwill with those accounts for USI.

**Defendant's answer:** Defendant admits that he became a producer at USI Insurance after USI acquired CIS, and that Defendant worked with many of the same client accounts he worked on at CIS and that Defendant worked to develop and maintain goodwill with his clients. Except as so admitted, Defendant denies the allegations.

14.   Tilleman's offer was contingent upon his acceptance of certain terms and conditions, which he had an opportunity to negotiate, set forth in an Employment Agreement that USI Insurance sent to him on April 19, 2018, and which became effective on May 4, 2018.

**Defendant's answer:** Defendant denies he had an opportunity to negotiate all terms of the agreement, including the restrictive covenants that are the basis of Plaintiff's claims for breach of contract and injunctive relief. Defendant admits that his offer to work for USI Insurance was contingent upon his execution of the Employment Agreement, which was sent to him in or about April 2018 and became effective in or about May 2018. Otherwise, Defendant denies the allegations.

15.   Closing on USI Insurance's purchase of CIS occurred on May 4, 2018, at which

time Tilleman became a USI Insurance employee. Effective January 1, 2021, USI Insurance assigned Tilleman's Employment Agreement to USINW, which assignment Tilleman consented to in the Employment Agreement.

**Defendant's answer:** Defendant admits that he became an employee of USI Insurance in or about May 2018 and that the Employment Agreement was between him and USI Insurance. Defendant admits that the Agreement speaks for itself. Except as so admitted, Defendant lacks sufficient information or belief to admit or deny the allegations, and on that basis denies the allegations.

16.   As consideration for entering into the Agreement, USI provided Tilleman separate and additional compensation to which he was not otherwise entitled in the form of a Retention Payment and an Acquisition Bonus. (Ex. A, pg. 1.) Tilleman has already received over two hundred thousand dollars in his Acquisition Bonus alone.

**Defendant's answer:** Defendant admits he received money from USI to compensate CIS legacy brokers for the lower commission rates used at USI Insurance, which USI Insurance  referred to as commission rate buy-down payments. Defendant denies he received any Retention Payment. Otherwise, Defendant denies the allegations.

17.   Tilleman has received substantial compensation as a result of his employment with USI – eight hundred thousand dollars – to date.

**Defendant's answer:** Defendant admits that his compensation records at USI speak for themselves. Defendant denies the allegations to the extent they are inconsistent with those records.

18.   In the Agreement, Tilleman acknowledged that, in his role as a Producer, he had and would continue to have significant responsibility for maintaining and enhancing the goodwill of USI Insurance with respect to its client accounts and relationships with prospective clients. (Ex. A, pg. 1.)

**Defendant's answer:** Defendant admits that the Agreement speaks for itself. Except as expressly admitted above, Defendant denies each and every remaining allegation of Paragraph 18.

19.   Tilleman further acknowledged that USI had a "reasonable, necessary and legitimate business interest" in protecting USI's "Confidential Information, Client Accounts, relationships with Active Prospective Clients, Goodwill, employee relationships, and ongoing business" and that the terms and conditions of the Agreement were reasonable and necessary in order to protect those interests. (Ex. A, pg. 2.)

**Defendant's answer:** Defendant admits that the Agreement speaks for itself. Except as expressly admitted above, Defendant denies each and every remaining allegation of Paragraph 19.

20.   To protect USI's goodwill and other business interests, and in consideration for the Retention Payment and Acquisition Bonus and other good and valuable consideration, Tilleman agreed to the following limited covenants.

> 2.3 *No Conflicts of Interest.* During Producer's employment hereunder, Producer agrees not to accept other employment or perform any activities or services that would be inconsistent with this Agreement or would interfere with or present a conflict of interest concerning Producer's employment with the Company, unless disclosed to and agreed to by the Regional CEO and Chief Compliance Officer in writing. Producer agrees to comply with all business practices and ethical conduct requirements set forth in writing by USI and/or the Company in employee manuals and other publications.
>
> * * * *
>
> 2.4 *Duty of Loyalty.* Producer acknowledges a duty of loyalty to the Company and agrees to use his/her best efforts to faithfully, diligently and completely perform all duties and responsibilities hereunder in furtherance of the business of the Company and any other USI Company.
>
> * * * *
>
> 8.2 *Confidentiality During and Following Term.* During the Term

and for five (5) years after Producer[1] is no longer employed hereunder, for any reason, Producer will not use or disclose any Confidential Information of the Company, any Predecessor or any USI Company except: (a) in the normal course of business on behalf of any USI Company; (b) with the prior written consent of such USI Company; or (c) to the extent necessary to comply with the law or the valid order of a court of competent jurisdiction, in which event Producer shall notify such USI Company as promptly as practicable (and, if possible, prior to making such disclosure). ...

8.5 *Non-Solicitation of Clients and Active Prospective Clients*. In consideration of Producer's employment hereunder, and for other good and valuable consideration, Producer agrees that:

(a) During the Term and for two (2) years after Producer is no longer employed hereunder, for any reason, Producer shall not, without the Company's[2] prior written consent, directly or indirectly, on behalf of any Competitive Business in any capacity: (i) solicit or attempt to solicit services in competition with the Company to any Client Account; (ii) divert or attempt to divert services away from the Company with respect to any Client Account; (iii) consult for any Client Account with respect to services in competition with the Company; (iv) sign a broker of record letter with any Client Account to provide services in competition with the Company; or (v) induce the termination, cancellation or non-renewal of any Client Account; in each case with respect to any Client Account that Producer managed or regularly serviced and/or about which Producer obtained Confidential Information on behalf of the Company or any Predecessor within the last two (2) years of Producer's employment hereunder.

(b) During the Term and for six (6) months after Producer is no longer employed hereunder, for any reason, Producer shall not, without the Company's prior written consent, directly or indirectly, on behalf of any Competitive Business in any capacity: (i) solicit or attempt to solicit services in competition with the Company to any Active Prospective Client; (ii) divert or attempt to divert services away from the Company with respect to any Active Prospective Client; (iii) consult for any Active Prospective Client with respect to services in competition with the Company; or (iv) sign a broker of record letter with any Active Prospective Client to provide services in

---

[1] In the Agreement, "Producer" refers to Tilleman.

[2] In the Agreement, "Company" refers to USI Insurance.

competition with the Company; in each case with respect to any Active Prospective Client that Producer solicited and/or about which Producer obtained Confidential Information on behalf of the Company or any Predecessor within the last six (6) months of Producer's employment hereunder.

* * * *

8.6 *Non-Acceptance / Non-Service of Clients and Active Prospective Clients.* In consideration of Producer's employment hereunder, and for other good and valuable consideration, Producer agrees that:

(a) During the Term and for two (2) years after Producer is no longer employed hereunder, for any reason, Producer shall not, directly or indirectly, on behalf of any Competitive Business in any capacity: (i) sell, provide, or accept any request to provide services in competition with the Company to any Client Account; or (ii) sign or accept a broker of record letter to provide services in competition with the Company to any Client Account; in each case with respect to any Client Account that Producer managed or regularly serviced and/or about which Producer obtained Confidential Information on behalf of the Company or any Predecessor within the last two (2) years of Producer's employment hereunder.

(b) During the Term and for six (6) months after Producer is no longer employed hereunder, for any reason, Producer shall not, directly or indirectly, on behalf of any Competitive Business in any capacity: (i) sell, provide, or accept any request to provide services in competition with the Company to any Active Prospective Client; or (ii) sign or accept a broker of record letter to provide services in competition with the Company to any Active Prospective Client; in each case with respect to any Active Prospective Client that Producer solicited and/or about which Producer obtained Confidential Information on behalf of the Company or any Predecessor within the last six (6) months of Producer's employment hereunder.

(Ex. A, §§ 2.3, 2.4, 8.2, 8.5, 8.6)

**Defendant's answer:** Defendant admits that the Agreement speaks for itself. Defendant denies the allegations to the extent they are inconsistent with the terms of the Agreement.

21.   The purpose of the above covenants is to protect the goodwill that USI has

established and developed through its Producers, and the confidential information that USI provides to its Producers, from being used against the company in the event the Producer leaves USI for a competitor.

**Defendant's answer:** Denied.

22.   To minimize any negative impact on the Producer, in addition to the significant compensation USI pays to its Producers, the Employment Agreement's non-solicitation and non-service restrictions are limited to the client accounts and the active prospects that the departing Producer either personally solicited, serviced or managed or about which the Producer obtained confidential information on behalf of USI.

**Defendant's answer:** Defendant admits that the Agreement speaks for itself. Defendant denies the allegations to the extent they are inconsistent with the terms of the Agreement.

23.   The two-year time limit on the restriction against soliciting or serving USI's clients is necessary to give USI the time necessary to assign and train a new Producer to take over the client account, to familiarize themselves with the client's particular needs, and to establish a relationship with the client that will negate the client's identification of USI with the departed Producer.

**Defendant's answer:** Denied.

24.   Notably, many of the insurance products that USI places for its clients have a one-year policy period. USI's efforts to guide and assist its clients through the critical renewal stage – which are performed largely through its Producers – typically begin months before the renewal date.

**Defendant's answer:** Defendant admits that many insurance products have a one-year policy period and that Defendant, in his own practice,  typically begins work on renewals months before the renewal date. Except as so admitted, Defendant lacks

sufficient information or belief to admit or deny the allegations, and on that basis denies the allegations.

25.   If a Producer leaves USI days, weeks or a few months before a client's renewal date, USI's ability to assist that client through the renewal process will necessarily be rushed, which could be used against USI by the departed Producer. The two-year limit ensures USI, and the new USI Producer assigned to the client account, will have an opportunity show his/her worth and value to the client by working with and servicing the client for a full policy-period, and guiding and assisting the client through the next renewal process under more typical circumstances.

**Defendant's answer:** Denied.

26.   The short, six-month restriction on soliciting or servicing USI's Active Client Prospects is designed to restrict the departing Producer from capitalizing on USI's goodwill and relationships with respect to, and only with respect to, those active leads that may identify the Producer with USI or about which the Producer may have confidential information by virtue of his/her USI employment.

**Defendant's answer:** Denied.

27.   Tilleman agreed that the time and scope of the above-listed limitations were reasonable and necessary to protect USI's confidential information, goodwill, and other business interest. Tilleman further agreed that, if a court were to find that any covenants in the Agreement exceeded the permissible scope or limit, "such covenants shall be reformed to the maximum permissible time or scope limitations" and that "[i]f a court refuses to enforce any of these covenants, in whole or in part, the unenforceable terms shall be eliminated ("blue penciled") or otherwise modified to the minimum extent necessary to permit the remaining terms to be enforced." (Ex. A, § 8.10.)

**Defendant's answer:** Defendant admits that the Agreement speaks for itself.

Defendant denies the allegations to the extent they are inconsistent with the terms of the Agreement.

28.   In the Agreement, Tilleman also acknowledged that the services he would be rendering as an employee of USI were "of a special unique, and extraordinary character", that "it would be extremely difficult or impracticable to replace such service" and that "any damage caused by [Tilleman's] breach of Section 8 of the Agreement would result in irreparable harm to the business of the Company for which money damages alone would not be adequate compensation."

**Defendant's answer:** Defendant admits that the Agreement speaks for itself. Defendant denies the allegations to the extent they are inconsistent with the terms of the Agreement.

29.   Tilleman agreed that, if he violated Section 8 of the Agreement, USI would be entitled to injunctive or other equitable relief, in addition to any other available rights or remedies.

**Defendant's answer:** Defendant admits that the Agreement speaks for itself. Defendant also alleges that trial courts are afforded discretion in granting or denying equitable relief, and a contracting party's acknowledgement that the other contracting party has a right to equitable relief does not bind judicial actors or require a court to grant the equitable relief requested. Defendant denies the allegations to the extent they are inconsistent with the terms of the Agreement.

30.   With respect to the term and termination of his employment, Tilleman agreed as follows:

> 2.5 ***Term***. Producer's employment hereunder shall commence on the Effective Date and continue until terminated pursuant to Section 9 (the "**Term**").

> 9.2 ***Termination by Producer.*** Producer may terminate Producer's employment hereunder by giving at least sixty (60) days

written notice to the Company. The termination of employment shall be effective on the date specified in such notice; provided, however, at any time following receipt of such notice, the Company may: (a) accept Producer's termination of employment hereunder effective on such earlier date specified by the Company; and/or (b) require Producer to cease performing any services hereunder until the termination of employment.

(Ex. A, § 9.2.)

**Defendant's answer:** Defendant admits that the Agreement speaks for itself. Defendant denies the allegations to the extent they are inconsistent with the terms of the Agreement.

31.   Tilleman was the face of USI for the clients he serviced and the prospects he solicited during his USI employment. USI encouraged, facilitated, and invested in Tilleman's efforts to develop relationships with USI's client accounts and client leads by, among other things, providing Tilleman with: (i) information about prospective client leads; training, education, and business development opportunities; (ii) financial support; (iii) access to the insurers, underwriters, and brokers with whom USI has agency relationships; (iv) value added support services such as client claim services, loss control service and risk management services; and (v) infrastructure and support personnel to help Tilleman's efforts to establish and expand USI's relationship with its clients.

**Defendant's answer:** Defendant admits that USI encouraged Defendant to develop new clients; that USI provided some client leads (much of which was not useful); that USI reimbursed some expenses Defendant incurred in developing business; that USI provided office support; that USI provided support personnel of uneven ability to assist with client accounts; that USI encouraged Defendant to work with certain insurers, underwriters and brokers with which USI had relationships and sometimes blocked Defendant from working with different insurers, underwriters or brokers, even though Defendant thought those different insurers, underwriters or brokers could provide better deals for his clients; and that USI provided client claim services, loss control service, and

risk management service (to the extent Defendant understands those terms) of uneven quality. Except as so admitted, Defendant denies the allegations.

### D.   Tilleman Purports to Resign from USI and Breaches the Covenants in the Agreement.

32.   On February 3, 2021, via e-mail message to Gary Patterson, Executive Vice President, Property & Casualty Practice Leader for USI, Tilleman abruptly and unexpectedly announced he was resigning from USI, "effective immediately." Tilleman directed all future communication to his attorney.

**Defendant's answer:** Defendant states that the February 3, 2021 email sent by Defendant to Gary Patterson speaks for itself. Otherwise, Defendant denies the allegations.

33.   On that same date, another Producer, Vanessa Anderson, also announced she was resigning from USI "effective immediately." Anderson and Tilleman jointly serviced many of the same client accounts for USI. Anderson entered into an employment agreement with USI that is substantially similar to Tilleman's Agreement.

**Defendant's answer:** Defendant admits that he and Ms. Anderson jointly serviced some of the same accounts while they both worked at USI. Defendant also admits that Vanessa Anderson resigned from USI. Except as so admitted, Defendant lacks sufficient information or belief to admit or deny the allegations, and on that basis denies the allegations.

34.   Almost immediately after providing notice that they were resigning from USI and without waiting the 60-days required by their respective employment agreement, Tilleman and Anderson accepted employment as a Producers with Alliant. By no later than February 8, 2021, Tilleman was publicizing his employment with Alliant on his LinkedIn profile page.

**Defendant's answer:** Defendant admits that he started working for Alliant on

February 4, 2021 and that he edited his LinkedIn profile to show that he was working at Alliant. Defendant admits that Anderson also started working at Alliant. Except as so admitted, Defendant denies the allegations.

35.   The purpose of the 60-day notice in Tilleman's Agreement is to provide USI the necessary time to facilitate the orderly transition of client account relationships that were serviced or managed by the departing Producer to a new USI Producer so that USI can better maintain and continue its goodwill and relationship with those clients.

**Defendant's answer:** Denied.

36.   Thus, by breaching that notice provision, and then compounding that breach by immediately joining a direct USI competitor and publicizing that he had done so, in violation of Sections 2.3 and 2.4 of his Agreement, Tilleman severely hampered USI's ability to maintain and continue its goodwill and relationship with the client accounts Tilleman had serviced for USI.

**Defendant's answer:** Denied.

37.   Following his attempted resignation, Tilleman has not returned to work for USI. However, USI takes the position that pursuant to Section 9.2 of the Agreement, Tilleman's resignation from USI violates the 60-days' notice requirement and Tilleman's acceptance of employment with Alliant violates his obligations under Section 2.3, 2.4, and 9.2 of the Employment Agreement.

**Defendant's answer:** Defendant admits that he has not returned to USI and that USI's position is stated in its Complaint. Otherwise, Defendant denies the allegations.

38.   In an effort to minimize harm caused by Tilleman's breach, on February 4, 2021, USI sent a letter to Tilleman indicating his effective resignation date of April 3, 2021, and reminding him of his obligations under the Agreement.

**Defendant's answer:** USI's February 4, 2021 letter to Defendant speaks for itself.

Defendant denies the allegations to the extent they are inconsistent with the terms of the letter.

39.   Pursuant to Section 9.3 of the Employment Agreement, USI has committed to paying Tilleman any commissions earned through the remainder of the 60-day notice period and intends to do so up to and including April 3, 2021—60 days from the date of Tilleman's resignation notice.

**Defendant's answer:** Defendant admits that following his resignation, he expressly stated to USI that he was no longer an employee of USI and, accordingly, did not wish to receive, and would not accept, any further payments from USI. Despite that clear communication, Defendant admits that USI has continued to issue payments to him. Defendant further admits he has done nothing with those funds and is holding them until such time that USI will accept reimbursement in the full amount that has been paid following Defendant's resignation. Except as so admitted, Defendant lacks sufficient information or belief to admit or deny the allegations, and on that basis denies the allegations.

40.   On February 9, 2021, Tilleman, by his counsel, Regina McCrea, sent an email to counsel for USI denying that Tilleman remains employed by USI.

**Defendant's answer:** Admitted.

41.   On February 11, 2021, in an effort to minimize harm caused by Tilleman's breach, USI's counsel sent a letter to Tilleman's counsel that reiterated Tilleman's obligations under the Agreement and demanding, among other things, that Tilleman immediately cease from performing work or services on behalf of Alliant until after the effective date of his termination on April 3, 2021.

**Defendant's answer:** USI's counsel's letter of February 11, 2021 to Defendant's counsel speaks for itself. Defendant denies the allegations to the extent they are

inconsistent with the terms of the letter. Otherwise, Defendant denies the allegations.

**E.   USI Discovers Tilleman's Breaches of the Employment Agreement.**

42.   On or about February 9, 2021, USI received a call from one of USI's large agribusiness co-op clients that had been serviced for USI by Tilleman and Anderson up to the time they announced their resignations from USI. The client advised USI that it would be transferring his business from USI to Alliant. USI's annual commission revenue from this client alone was approximately one hundred thousand dollars ($100,000.00).

**Defendant's answer:** Defendant lacks sufficient information or belief to admit or deny the allegations, and on that basis denies the allegations.

43.   On or about February 10, 2021, USI was informed by another one of its large agribusiness co-op clients—serviced by Tilleman and Anderson for USI up to their purported resignation—that it too would be transferring business from USI to Alliant. USI's annual commission revenue from this client alone was over one hundred thirty thousand dollars ($130,000.00).

**Defendant's answer:** Defendant lacks sufficient information or belief to admit or deny the allegations, and on that basis denies the allegations.

44.   On February 15, 2021, USI was informed that yet another one of its large agribusiness clients—again serviced by Tilleman and Anderson for USI up to their purported resignations—would also be transferring business from USI to Alliant.

**Defendant's answer:** Defendant lacks sufficient information or belief to admit or deny the allegations, and on that basis denies the allegations.

45.   Based on the aforementioned client correspondence, the coordinated conduct of Tilleman and Anderson (*e.g.*, simultaneous resignations), it is apparent that Tilleman has breached, and intends to further and imminently breach, the covenants of his Agreement by soliciting and/or servicing for Alliant, additional client accounts that

Tilleman managed or serviced for USI.

   **Defendant's answer:** Denied.

46.   Tilleman's breaches of his contractual promises are causing imminent and irreparable injury to USI's goodwill and client relationships.

   **Defendant's answer:** Defendant states that the Court denied Plaintiff's request for a temporary restraining order and preliminary injunction on the ground that its allegations did not support a finding of irreparable harm. Except as so stated, Defendant denies the allegations.

47.   As a result of Tilleman (and Alliant) trading on the goodwill that USI and its predecessors spent substantial money, time, and effort to develop through their employment of Tilleman, USI has already lost 10 clients serviced by Tilleman and has received Broker of Record ("BOR") letters from insurance companies for 8 of those clients, advising USI the clients intend to leave USI for another broker, almost certainly, Alliant.

   **Defendant's answer:** Denied.

48.   Based on discussions with its clients and their insurers, USI expects to soon receive additional BORs concerning other Tilleman-serviced clients asking to do the same.

   **Defendant's answer:** Defendant lacks sufficient information or belief to admit or deny the allegations, and on that basis denies the allegations.

49.   Under the terms that insurance companies impose when a client changes its broker, USI has only days to try to convince those clients to rescind the change and stay with USI.

   **Defendant's answer:** Defendant admits that a broker, after receiving notice of receipt of a BOR letter, is given a period of days, typically between 5-10 days, to

communicate with the client and attempt to obtain a countermanding letter indicating the client does not wish to change brokers. Defendant also admits that USI is free to try to convince a client to do business with it at any time.

50.   USI stands little chance of succeeding in those efforts if Tilleman is allowed to continue to violate his Agreement. And once those clients leave, USI will not only lose the future commissions to be generated by those accounts, USI also loses all of the goodwill and opportunities for an expanded and continuing relationship that USI established with that client through its employment of Tilleman.

**Defendant's answer:** Denied.

51.   By his actions, Tilleman is taking USI's goodwill, and all of the benefits and opportunities that USI stood to realize through that goodwill, and using them against USI and for Alliant. Unless Tilleman's conduct is immediately stopped, USI will continue to suffer additional irreparable harm to its goodwill and client relationships that USI has no way to precisely measure and that monetary damages cannot repair.

**Defendant's answer:** Denied.

## COUNT 1

## Breach of Contract

52.   Plaintiff realleges and incorporates the allegations in Paragraphs 1 through 51 above.

**Defendant's answer:** Defendant repeats, realleges, and incorporates paragraphs 1 through 51 of this Answer as if fully set forth herein.

53.   The Agreement is a valid and enforceable contract under Idaho law.

**Defendant's answer:** Denied.

54.   USI has performed all obligations required under the Agreement.

**Defendant's answer:** Denied.

55.    Tilleman has breached, and is continuing to breach, the Agreement by, among other things, failing and refusing to provide USI with 60-days' notice prior to terminating his employment.

**Defendant's answer:** Denied.

56.    Tilleman has breached, and is continuing to breach, the Agreement by, among other things, accepting employment with Alliant, a direct competitor of USI, in a similar capacity and in the same market as his employment with USI, prior to the expiration of the 60-day notice of termination period set forth in the Agreement.

**Defendant's answer:** Denied.

57.    Tilleman has breached, and is continuing to breach, the Agreement by, among other things, soliciting and/or servicing, on behalf of Alliant, client accounts that he managed or regularly serviced and/or about which he obtained confidential information during the last two years of his employment with USI.

**Defendant's answer:** Denied.

58.    Tilleman has breached, and is continuing to breach, the Agreement by, among other things, upon information and belief, soliciting, on behalf of Alliant, Active Prospective Clients that he had solicited or about which he obtained confidential information on behalf of USI during the last six months of his employment with USI.

**Defendant's answer:** Denied.

59.    Tilleman has breached, and is continuing to breach, the Agreement by, among other things, upon information and belief, soliciting or otherwise inducing other USI employees, including Anderson, to leave USI's employment and join Alliant.

**Defendant's answer:** Denied.

60.   Tilleman's breaches have caused and are continuing to cause USI to suffer damages, including, without limit, lost commissions and profits in excess of $75,000, and have caused and are continuing to cause irreparable harm to the client goodwill that USI employed Tilleman to foster and develop for USI.

**Defendant's answer:** Denied.

61.   The injury to USI's goodwill that has been, and continues to be, caused by Tilleman's breaches of the Agreement is irreparable and cannot be remedied by an award of monetary damages.

**Defendant's answer:** Denied.

## COUNT 2

## Injunctive Relief

62.   Plaintiff realleges and incorporates the allegations in Paragraphs 1 through 61 above.

**Defendant's answer:** Defendant repeats, realleges, and incorporates paragraphs 1 through 61 of this Answer as if fully set forth herein.

63.   As a direct and proximate result of Tilleman's conduct set forth above, USI has suffered, and will continue to suffer, irreparable harm to its client goodwill and, potentially, its confidential information. By his conduct, Tilleman is taking for himself and for Alliant the client goodwill that USI employed Tilleman to develop and maintain for its benefit, along with any USI confidential information that Tilleman may be using to facilitate his solicitation or service of USI client accounts or Active Prospective Clients for Alliant.

**Defendant's answer:** Denied.

64.   In his Agreement, Tilleman expressly acknowledged and agreed that a remedy at law for a breach of the covenants contained in the Agreement would be inadequate, and

that USI is entitled to injunctive relief for such a breach.

**Defendant's answer:** Defendant admits that the Agreement speaks for itself. Defendant denies the allegations to the extent they are inconsistent with the terms of the Agreement.

65. Without injunctive relief prohibiting Tilleman from engaging in conduct prohibited by the covenants in Section 8 of his Agreement, Tilleman's continued solicitation and servicing of the client accounts and/or Active Prospective Clients he previously serviced or solicited for USI, along with his use of any USI confidential information to facilitate that solicitation or service, will continue to cause irreparable harm to USI's goodwill and customer relations by permitting Tilleman to take for himself and Alliant the client goodwill that USI employed Tilleman to develop and maintain for its benefit.

**Defendant's answer:** Denied.

66. In addition to his violation of the covenants, Tilleman's violation of his Agreement's 60-day notice provision, coupled with him immediately becoming an employee of Alliant and publicizing that employment in violation of Sections 2.3 and 2.4 of the Agreement, has severely harmed USI's ability to successfully transition the client account relationships that were handled by Tilleman to a new USI Producer, thereby causing, and imminently threatening to cause, further irreparable injury to USI's goodwill and relationship with those client accounts. Accordingly, without further injunctive relief prohibiting Tilleman from working for Alliant for the remainder of the 60-day period following his notice of resignation from USI, USI will suffer additional irreparable harm to its business.

**Defendant's answer:** Denied.

67. In contrast, no harm will accrue to Tilleman by a grant of injunctive relief

because, under the express terms of his Agreement, Tilleman never had a right to, and expressly promised that he would not, engage in the conduct that is the subject of this claim.

**Defendant's answer:** Denied.

68.   Notably, enforcement of the covenants of the Agreement does not preclude Tilleman from working or from working for Alliant. Tilleman is free to work as a Producer for Alliant 60-days after he submitted notice of his resignation to USI. In that employment, Tilleman is simply prohibited from using USI's confidential information and, for a two-year period, from soliciting or servicing the client accounts that he serviced or managed for USI or about which he obtained confidential information on behalf of USI during the last two years of his USI employment and, for six months, from soliciting or servicing the Active Prospective Clients that he solicited or about whom he obtained Confidential Information on behalf of USI during the last six months of his USI employment. (*See* Ex. A, §§ 8.2, 8.5, 8.6.)

**Defendant's answer:** Defendant admits that the Agreement speaks for itself. Defendant denies the allegations to the extent they are inconsistent with the terms of the Agreement.

69.   Injunctive relief is appropriate because the protection and maintenance of USI's goodwill, customer relations, and confidential information is a vital and legitimate business concern. In the absence of injunctive relief, USI will sustain irreparable harm to its goodwill and business as it will be virtually impossible (notwithstanding all due diligence) to prevent further loss or damage to those concerns or to precisely calculate the extent of business losses and damage associated with Tilleman's conduct.

**Defendant's answer:** Denied.

70.   The public interest will not be harmed if an injunction is granted.

**Defendant's answer:** Denied.

71.    In the Agreement, Tilleman expressly waived any requirement for USI to post a bond to secure injunctive relief for a violation of Tilleman's covenants. If the Court determines that the posting of any security is necessary to obtain injunctive relief, USI request the amount be *de minimus* given Tilleman's blatant disregard for and violations of his obligations under the Agreement.

**Defendant's answer:** Defendant admits that the Agreement speaks for itself. Defendant denies the allegations to the extent they are inconsistent with the terms of the Agreement. Otherwise, Defendant denies the allegations.

**WHEREFORE**, Defendant requests a jury trial and judgment as follows:

A.    Dismiss Plaintiff's claims, deny Plaintiff's requested relief, and enter judgment on the claims in favor of Defendant;

B.    Award Defendant his costs, and disbursements incurred in defending against the claims; and

C.    Award Defendant such other and further relief as it deems proper.

## Affirmative Defenses

In further response to Plaintiff's claims, Defendant pleads the following affirmative defenses:

1.    Plaintiff's claims should be dismissed, in whole or in part, because they have no basis in law or fact.

2.    Plaintiff's claims are barred, in whole or in part, because Plaintiff, by its own acts/or omissions, has waived each and every cause of action or other right against Defendant.

3.    By reason of Plaintiff's acts or omissions, Plaintiff is estopped from seeking or obtaining any relief from Defendant under each of its purported claims for relief.

4.   Plaintiff's claims are barred, in whole or in part, by the doctrines of consent and/or acquiescence.

5.   Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

6.   Plaintiff's claims are barred, in whole or in part, to the extent that provisions in the asserted agreements are void and/or unenforceable under applicable Idaho law or under good faith arguments or bases to extend applicable Idaho law.

7.   Plaintiff's claims fail, in whole or in part, because they are based, either in whole or in part, on contractual provisions that are unconscionable and therefore may not be enforced.

8.   To the extent Defendant's purported liability is premised on alleged underlying breaches of contract by Defendant, Defendant's performance was excused by virtue of Plaintiff's material breach of any contracts with Defendant, constructive discharge of Defendant, breach of the implied covenant of good faith and fair dealing inherent in Defendant's contracts with Plaintiff, and/or other wrongs.

9.   Plaintiff's claims are barred, in whole or in part, by the competitor's privilege. A competitor is entitled to compete freely, absent statutory prohibitions, illegitimate means, or unlawful conduct.

10.   Plaintiff's claims are barred, in whole or in part, on the grounds that Defendant's alleged conduct was at all times justified and undertaken in the good faith exercise of a valid and legitimate business purpose.

11.   Plaintiff's claims are barred, in whole or in part, on the grounds that no information of Plaintiff was confidential because Plaintiff failed to treat it as confidential or such information was in the public domain or otherwise readily ascertainable by proper means.

12.   By reason of its unclean hands, Plaintiff is precluded from recovery in this action. Plaintiff has acted with unclean hands in at least the following respects:

   ▪   USI told Defendant he needed to spend 80% of his time developing new

business and only 20% of his time servicing his existing clients. Tilleman did not think he could provide his clients with the service they expected and deserved by giving them only 20% of his time.

- Defendant found that USI account managers lacked the training to provide quality service to agribusiness clients. USI further compounded this problem in May 2020, when it announced it was giving account managers sole responsibility for maintaining existing accounts, including handling renewals. Defendant received complaints from clients about the quality of service they were receiving. Defendant made proposals to address these quality problems, but USI management rejected them.

- In or about early 2020, Defendant learned that USI expected all brokers (regardless of their existing book of business) to write $75,000 in new revenue per year or face transfer (demotion) to an administrative position with a 40% pay cut.

- In early 2020, USI disbanded a safety consulting division CIS had created. About 120 clients had used the services offered by the division to help them develop safety programs for their businesses. Defendant's clients were upset they would no longer have that resource available to them.

- In the summer of 2020, USI changed its claims reporting process. Now clients had to report claims directly to carriers, instead of reporting them to producers. Defendant received more complaints from clients; they expressed they would still prefer to report their claims to Defendant from whom they could acquire valued guidance and opinions given the extent of his industry knowledge.

- In or about September 2020, USI broke its agribusiness vertical into separate regions. Defendant was assigned to the Northwest Region, even though many of his clients were in the Mountain Region. Consequently, Defendant no

longer received information and referrals from people in the Mountain Region. And USI told Defendant he could not access carriers that were outside the region the client was located in. Defendant believed this organizational change negatively impacted his ability to develop and retain clients and compromised his ability to provide existing clients the best possible service. It also resulted in turf wars between regions.

▪ In or about January of 2021, Defendant wrote new business for United Agronomy in North Dakota. The Mountain Region claimed the account as its business. Because Defendant was then in the Northwest Region, the Northwest Region also claimed the account as its business. Defendant was caught in the middle of this fight between two regions over about $40,000 in revenue. This incident was confirmation that USI's decision to break up the agribusiness vertical into regions was not a good one for agribusiness producers.

▪ In January of 2021, in connection with work on a cyber policy for an Ohio client, Defendant asked USI management if he could market the business to a carrier he had access to in the Northwest Region. Defendant thought that the carrier could give the client a better deal. Management told Defendant he could not do that. This was the first time Defendant was ever told he could not do this; previously, Defendant had always been able to choose the most appropriate carrier for a client, regardless of the carrier's geographic location. USI was building walls that prevented Defendant from providing his clients with the best options and services possible.

▪ In or about January of 2021, USI informed Defendant that only producers assigned to the Mountain Region were going to get Mountain Region prospects. This affected several producers, including Defendant, who had developed clients in the Mountain Region and who had been promised

referrals to Mountain Region prospects. It also contradicted earlier statements Defendant had received from USI management that there were no lines or territories at USI and that Defendant could prospect for clients anywhere. Moreover, this new policy only applied to CIS legacy brokers. USI brokers who did not come over from CIS were allowed to prospect in any region they wanted.

13.    Without admitting that Defendant is at fault in any way or that Plaintiff has incurred any damages, and solely for the purpose of stating this defense, any award to Plaintiff under its claims is barred on the ground that every action taken by Defendant constituted a good faith belief that such action was lawful.

14.    To the extent Plaintiff has suffered any harm, such harm is calculable, and pecuniary compensation would afford adequate relief.

15.    To the extent Plaintiff has suffered any damages, any damages awarded to Plaintiff must be reduced on the basis of Plaintiff's failure and refusal to make reasonable efforts to mitigate, minimize, or avoid any alleged damages, including by making competitive offers to provide products and services.

16.    Plaintiff's damages, if any, were caused by the conduct of other individuals or business entities over whom Defendant had no control and for whose actions he should not be held responsible.

17.    Plaintiff's claim for injunctive relief should be dismissed, in whole or in part, because Plaintiff cannot show the existence of irreparable harm or the absence of an adequate remedy at law.

### Affirmative Defenses Reserved

Defendant reserves the right to amend these affirmative defenses to add, delete, or modify defenses based upon legal theories that might or will be divulged through clarification of pleadings, through discovery, or through further legal analysis.

## Demand for Jury Trial

Defendant demands a jury trial of all claims and defenses triable by jury.


Respectfully submitted this 22nd day of April, 2021.

OWEN, McCREA LINSCOTT PLLC

/s/ Regina M. McCrea
_____

Regina M. McCrea, ISB No. 6845
Email: *rmccrea@omllaw.com*
OWEN, McCREA LINSCOTT PLLC
6500 N. Mineral Drive, Suite 103
Coeur d'Alene, ID  83815
Telephone: (208) 762-0203

Debra L. Fischer
Email: *debra.fischer@morganlewis.com*
Seth M. Gerber
Email: *seth.gerber@morganlewis.com*
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone: (310) 907-1000
Facsimile: (310) 907-1001


Attorneys for Defendant Lee Tilleman

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of April, 2021, I electronically filed the foregoing with the Clerk of the U.S. District Court using the CM/ECF system, which sent notice to the following persons:

D. John Ashby .......................................................................... jashby@hawleytroxell.com
William K. Smith ................................................................wsmith@ hawleytroxell.com
Hawley Troxell Ennis & Hawley LLP
877 Main Street, Suite 1000
PO Box 1617
Boise, ID 83701-1617

Lindsey D.G.Dates.................................................................................ldates@btlaw.com
Barnes & Thornburg LLP
1 N. Wacker Dr., Ste. 4400
Chicago, IL 60606

  s/ Regina M. McCrea
Regina M. McCrea
Owens, McCrea & Linscott